UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:15-cr-00019-JMS-CMM |
| | ) | |
| JASON DAVIS, | ) -03 | |
| | ) | |
| Defendant. | ) | |

**ENTRY GRANTING MOTION FOR COMPASSIONATE RELEASE**

On October 27, 2020, defendant Jason Davis, an inmate at the minimum-security camp at FCI Terre Haute, filed an emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). He has served more than half of his 120-month sentence and is scheduled to be released on April 14, 2024. He suffers from several underlying health conditions that increase or might increase his risk of severe illness or death from COVID-19. There is currently a surge of COVID-19 cases at his facility. He has no prior felony convictions. The instant conviction and his prior misdemeanor convictions were non-violent drug offenses. During his confinement, Mr. Davis has completed a drug treatment program and maintained a clean discipline record. The Bureau of Prisons ("BOP") classifies Mr. Davis as having a low risk of recidivism. For the reasons described in more detail below, Mr. Davis' motion for compassionate release is **GRANTED**.

# I.
# BACKGROUND

### A. Offense Conduct, Criminal History, and Medical History

Mr. Davis is 37 years old. On April 28, 2016, he pleaded guilty to a sole count of distribution of more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

Dkt. 286. His criminal conduct is summarized in the Presentence Investigation Report, dkt. 269, paras. 6-8. Pursuant to the Plea Agreement, the Court sentenced Mr. Davis to 120 months imprisonment at BOP followed by 5 years of supervised release. Dkt. 286, pp. 2-3. He is scheduled to be released on April 17, 2024. He has been in custody since October 11, 2015, and has served approximately 60% of his sentence.

Mr. Davis' prior criminal history includes a 2004 conviction for misdemeanor possession of marijuana and 2009 convictions for misdemeanor possession of marijuana and misdemeanor visiting a common nuisance. Dkt. 261, ¶¶. 25, 26.

Mr. Davis had a difficult childhood plagued by poverty and abuse. *Id.* at ¶¶. 32-37. His father was physically and emotionally abusive and was incarcerated for 3.5 years for trying to run Mr. Davis' mother off the road with his car. *Id.* at ¶. 35. After that incident, Mr. Davis and his siblings were primarily raised by his mother and lost contact with their father. *Id.* at 36. He turned to drugs at the age of 12 and began using methamphetamine by age 15 or 16. *Id.* at ¶¶52-57. Throughout his childhood and adulthood, he also abused cocaine, hallucinogens, synthetic drugs, and opioids. *Id.*

At the time of his arrest in October 2015, Mr. Davis was a daily drug user. *Id.* However, he participated in a 12-step program during his pretrial detention, and he completed a drug treatment program at BOP. *Id.* at ¶58; dkt. 816-3. He has maintained a clean discipline record during his confinement and participated in various education programing at BOP. Dkt. 816-4; dkt. 816-5.

Mr. Davis suffers from obesity and is a former smoker. Dkt. 816-14, p. 13; dkt. 816-9, pp. 28, 53. According to the Centers for Disease Control and Prevention ("CDC"), each condition increases the risk of severe illness or death from COVID-19. Mr. Davis also suffers from

hypertension, dkt. 261, ¶ 48, which might increase the risk of severe illness or death from COVID-19.[1] Finally, Mr. Davis suffered a fractured vertebra in his neck in 2009. Dkt. 261, ¶¶ 46-48. He was quadriplegic for 40 days and had to undergo spinal surgery. *Id.* He still suffers from hemiplegia—loss of sensation in half of his body—and uses a wheelchair or cane when traveling a significant distance. Dkt. 816-10.

### B. The COVID-19 Pandemic

More than 13.6 million people in the United States have tested positive for COVID-19, resulting in over 269,000 deaths.[2] Like many institutions, BOP has struggled to contain the spread of the pandemic among its inmates and staff. Of its 124,629 inmates and 36,000 staff members, 4,613 inmates and 1,448 staff members have tested positive and are still infected, 21,376 inmates and 2,043 staff members have tested positive and recovered, and 146 inmates and 2 staff members have died.[3]

FCI and FCC Terre Haute are currently experiencing a surge in COVID-19 cases. When the Government filed its brief on November 4, 2020, 11 inmates and 2 staff members had tested positive and were still infected. Dkt. 50, p. 1. As of December 3, 2020, those numbers have increased to 175 inmates and 21 staff members who have tested positive and still have the virus.[4]

## II.
## LEGAL STANDARD

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C.

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[2] https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days
[3] https://www.bop.gov/coronavirus/
[4] *Id.*

3

§ 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[5] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before

---

[5] The government concedes that Mr. Davis exhausted his administrative remedies as required by § 3582(c)(1)(A). *See* dkt. 819 at 7.

passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . )." It has not been updated since the First Step

Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, __ F. 3d __, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

### III.
### DISCUSSION

Mr. Davis argues that his preexisting medical conditions—which include obesity, hypertension, status as a former smoker, and hemiplegia—increase his risk of severe illness or death from COVID-19, which is currently surging in his facility. Relying on his lack of a prior felony conviction, his clean discipline record, his completion of a drug treatment program during confinement, and his BOP classification as a low recidivism risk, Mr. Davis further argues that his

early release would not create a danger to the community or be inconsistent with the sentencing factors in 18 U.S.C. § 3553.

In response, the government argues that Mr. Davis waived his right to seek compassionate release under the terms of his guilty plea. Further, the government argues that he has not set forth an extraordinary and compelling reason justifying his early release because his preexisting medical conditions are being monitored by medical staff at his facility. Finally, the government argues that the § 3553 sentencing factors weigh against early release because Mr. Davis distributed approximately 1,800 grams of methamphetamine, has a long history of substance abuse issues, and has a significant portion of his mandatory minimum sentence left to serve.

### A. Waiver

The government argues that Mr. Davis waived his right to seek a sentence modification under the terms of his plea agreement. Dkt. 819, pp. 13-14. Mr. Davis signed his original plea agreement on April 27, 2016, dkt. 153, and his amended plea agreement on April 28, 2016, dkt. 153. The Court accepted his guilty plea on April 28, 2016. Dkt. 155. In his plea agreement, Mr. Davis agreed "not to contest, or seek to modify, [his] conviction or sentence or the manner in which it was determined in any type of proceeding, including, but not limited to, an action brought under 18 U.S.C. § 3582 or 28 U.S.C. § 2255." Dkt. 153, para. 16.

In cases where a defendant signed a similar waiver and pleaded guilty before enactment of the First Step Act, this Court has consistently found that the defendant did not knowingly and voluntarily waive the right to file a compassionate release motion in district court because the right to file such a motion did not exist when the defendant agreed to the waiver. *See, e.g.*, *United States v. Rice*, No. 2:15-cr-19- JMS-CMM-10, dkt. 805, at 4–5 (S.D. Ind. Sept. 24, 2020) (denying motion to dismiss on basis of plea waiver); *United States v. Ayers*, No. 1:17-cr-255-TWP-TAB-01, dkt.

7

60 at 2–3 (S.D. Ind. Sept. 24, 2020) (same); *United States v. Jones*, No. 1:07-cr-00167-JMS-KPF, dkt. 99 (S.D. Ind. November 13, 2020) (same). By contrast, when a defendant signed his plea waiver and pleaded guilty after enactment of the First Step Act, this Court has found that the plea waiver controls. *See United States v. Egebrecht*, 2:17-cr-0007-JRS-CMM-01, dkt. 72 (S.D. Ind. June 29, 2020); *United States v. Harris-Harden*, No. 1:18-cr-211-JPH-TAB-1, dkt. 77 (S.D. Ind. Sept. 22, 2020).

Mr. Davis signed his waiver well before enactment of the First Step Act. Therefore, he did not knowingly and voluntarily waive the right to file a compassionate release motion, and the Court will proceed to the merits of Mr. Davis's motion.

### B. Extraordinary and Compelling Reasons

The COVID-19 pandemic is a serious public health crisis affecting every aspect of society. Most courts have concluded that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release," *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020); *United States v. Dickson*, No. 1:19-cr-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (same); *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons."); *see generally United States v. Clark¸* No. 1:09cr336-1, 2020 WL 1874140 at *8 (M.D.N.C. Apr. 15, 2020). However, many courts have found that a prisoner may show an "extraordinary and compelling reason" warranting a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) by demonstrating that the he is at an increased risk of severe illness from COVID-19 due to preexisting chronic medical conditions. *E.g. United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (granting release based on "chronic

obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" even though these conditions did not prevent him the prisoner from engaging in most of his daily activities without assistance); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020) (granting release based on hypertension, prostate issues, bladder issues, a dental infection and prediabeties); *United States v. Joling*, No. 11-cr-60131-AA, 2020 WL 1903280 (D. Ore. Apr. 17, 2020) (granting compassionate release based on "hypertension, atherosclerosis, a history of transient ischemic attacks, dyslipidemia, obesity, history of left lower extremity fracture" and diagnosis of "prostatic adenocarcinoma").

Mr. Davis does not suggest that Subsections (A)–(C) of Application Note 1 to § 1B1.13 provide him with an extraordinary and compelling reason warranting release. Instead, he asks the Court to exercise its broad discretion to find an extraordinary and compelling reason warranting his release in this case.[6]

Mr. Davis argues that he has demonstrated an extraordinary and compelling reason justifying early release because his obesity, hypertension, status as a former smoker, and hemiplegia put him at an increased risk of severe illness or death from COVID-19. Dkt. 816, pp. 21-32. The government concedes that Mr. Davis suffers from obesity and is a former smoker. Dkt. 819, pp. 21, 22. Although the BOP medical staff have not diagnosed Mr. Davis with hypertension, he received a hypertension diagnosis before his incarceration, and his BOP medical records include

---

[6] In keeping with the Seventh Circuit's instruction in *Gunn*, 2020 WL 6813955, at *2, the Court has considered the rationale provided by Mr. Davis' warden in denying his administrative request for relief. Mr. Davis' warden appears not to have considered the possibility that Mr. Davis could show an "extraordinary and compelling reason" under Subsection (D) of Application Note 1 to § 1B1.13 and instead focused only on Subsection (A). *See* dkt. 816-7. Thus, the warden's decision provides little guidance to this Court's analysis.

9

consistently elevated blood pressure readings. Dkt. 216, para. 48; dkt. 816-9; dkt. 8-10, pp. 14, 27, 37; dkt. 816-11, pp. 4, 31; dkt. 816-12, p. 21; dkt. 816-13, p. 10; dkt. 816-14, p. 14.

As described in Part I of this Order, the CDC lists obesity and status as a former smoker as preexisting medical conditions that increase the risk of severe illness or death from COVID-19. The CDC lists hypertension as a preexisting medical condition that might increase the risk of severe illness or death from COVID-19. The prison setting also poses risks which are recognized by many courts as significantly higher when it comes to preventing and treating infection, exacerbating the instances as well as the duration of this disease. *See, e.g.*, *United States v. Zukerman*, No. 16-cr-194-AT, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) ("Given that inmates at Otisville live in close quarters, social distancing is impracticable if not impossible, make it difficult for Zukerman to protect himself from the spread of this dangerous and highly contagious virus."); *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *5 (E.D. Penn. May 4, 2020) ("Prisons are ill-equipped to prevent the spread of COVID-19. Many of the recommended measures to prevent infection are impossible or unfeasible in prison.").

The United States frequently concedes that having a CDC-identified COVID-19 risk factor satisfies the "extraordinary and compelling" prong of § 3582(c)(1)(A)(i), even when the defendant is not limited in providing self-care and, thus, does not qualify under subsection (A). *See, e.g.*, *United States v. Finan*, No. 1:17-cr-87-TWP-MJD-1, dkt. 145 at 13 (S.D. Ind. June 23, 2020) ("Therefore, because [the defendant] has established that he has a CDC-identified COVID-19 risk factor, the government does not contest that he has satisfied the 'extraordinary and compelling reason' prong of section 3582(c)(1)(A)(i)."); *United States v. Elmer,* No. 1:17-cr-113-JRS-TAB, dkt. 247 at 7 (S.D. Ind. June 17, 2020) ("[The defendant's] diabetes, during the COVID-19 pandemic, presents an extraordinary and compelling reason allowing for compassionate release.");

*United States v. Sanders*, No. 3:06-cr-23-RLY-WGH-1, dkt. 31 at 6 (S.D. Ind. Oct. 26, 2020) ("The government concedes that the defendant has presented 'extraordinary and compelling circumstances,' in that he has at least one condition that puts him at an increased risk of severe illness from COVID-19. . . . Specifically, he is obese.").

Mr. Davis' preexisting medical conditions place him at an increased risk of severe illness or death from COVID-19. Because he is unable to protect himself from the risk of contracting COVID-19, and in light of the recent surge of COVID-19 cases at his facility and the community surrounding his facility, the Court finds that Mr. Davis has demonstrated an extraordinary and compelling reason justifying his early release.

### C. Danger to the Community or Another Person

The Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) is the provision outlining the factors the Court must consider in determining whether a defendant should be detained pending trial. In turn, § 3142(g) provides:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> > **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> >
> > **(2)** the weight of the evidence against the person;
> >
> > **(3)** the history and characteristics of the person, including--
> >
> > > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug

> or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The government does not argue that Mr. Davis would present a danger to the community or another person if he were released, *see generally*, dkt. 819, and the Court agrees. As explained above, Mr. Davis has no prior felonies, he has maintained clean conduct over more than 5 years of incarceration, and has completed various programming, including a drug treatment program. Accordingly, the Court concludes that Mr. Davis would not present a danger to the community or to another person if he were released.

### D.  § 3553 Sentencing Factors

In evaluating a motion for compassionate release, the final consideration is whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence. *United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020).

Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.—**The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > **(B)** to afford adequate deterrence to criminal conduct;
> > **(C)** to protect the public from further crimes of the defendant; and

>   > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> 
> **(3)** the kinds of sentences available;
> 
> **(4)** the kinds of sentence[s] and the sentencing range established for--
> 
>   > **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
> 
> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
> 
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> 
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court agrees that Mr. Davis' criminal conviction is very serious. He helped distribute approximately 1,800 grams of methamphetamine over a period of three months to small communities throughout central and southern Indiana. Nevertheless, Mr. Davis' criminal history does not indicate that he is violent or that he is a career criminal. He did not have a leadership role in the conspiracy. The government agreed to a sentence below the guidelines range, and he has served approximately 60% of his sentence.

Mr. Davis also had a difficult childhood plagued by poverty and abuse. He turned to drugs at the age of 12 and fell into a spiral of addiction, abusing marijuana, methamphetamine, cocaine, hallucinogens, synthetic drugs, and opioids. He was a daily drug user at the time of his arrest in October 2015. His substance abuse issues appear to be an underlying factor in his adult criminal conduct, as all his criminal convictions involve non-violent drug offenses.

During his confinement, Mr. Davis completed a drug treatment program and maintained a clean discipline record. BOP classifies him as having a low risk of recidivism. He owns a residence in Vincennes, which he shares with his domestic partner, and has significant family support. The Court is hopeful that Mr. Davis will continue his sobriety upon his release. The sentencing factors

in this case do not outweigh the extraordinary and compelling reasons justifying Mr. Davis' early release, and his motion for early release is **GRANTED**.

## IV.
## CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Davis's sentence of imprisonment, that Mr. Davis does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from imprisonment is consistent with the Sentencing Commission's policy statements. Therefore, the Court **GRANTS** Mr. Davis's Motion for Compassionate Release [816], **ORDERS** that Mr. Davis's sentence of imprisonment be reduced to time served as of **December 8**, **2020**, and further **ORDERS** the BOP to release Mr. Davis by **4:00 p.m. on December 8, 2020**. Counsel for the government is **ORDERED** to provide a copy of the AO248 Order to Mr. Davis' custodian no later than **5:00 p.m. on December 7, 2020**.

The terms of supervised release imposed in the Judgment of September 21, 2016, *see* dkt. 286, pp. 3-4, remain the same with the addition of the following condition: Upon release, the defendant is further **ORDERED** to comply with any period of quarantine directed by medical staff and/or any state or local health authority.

**IT IS SO ORDERED**.

Date: 12/7/2020

*[Signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel